43056. EDISON v. THE STATE.
(344 SE2d 231)

SMITH, Justice.

A Terrell County jury found the appellant, Willie Lee Edison, guilty of the murder of his sister, Lizzie Mae Pickett, and her husband, Armay James Pickett. Edison received a life sentence for each conviction. He raises five issues on appeal.[1] We affirm.

When Edison gained a release from Central State Hospital in 1981, he moved in with the Picketts in rural Terrell County. While Edison was living with the Picketts, an acquaintance heard Edison express resentment that Armay Pickett, who was partially paralyzed following a stroke, did not do his share of the work around the house. During this time, others noticed that Edison would often sit in a room alone and talk to himself.

Danny Eubanks, upon answering the telephone at the Dawson

---

[1] The crime was committed on November 19, 1983. The Terrell County jury returned its verdict of guilty on August 15, 1985. The transcript of evidence was filed on December 17, 1985 and notice of appeal was filed on September 12, 1985. The record was docketed in this Court on December 30, 1985 and submitted February 14, 1986.

Police Station in the evening on November 19, 1983, heard an operator state, "Go ahead, you've got the police department." He then heard another voice state, "I told you not to call the police department." Although Eubanks could hear another male voice and a female voice in the background, no one ever spoke to him, and the line eventually went dead. Eubanks recorded 955-4307 as the number given by the operator as the origin of the call. The Picketts' number was 955-3407. The police never attempted to reach the number.

Early in the afternoon of November 20, 1983, Mr. Pickett's daughter, Deborah, found the Picketts' bodies in their living room. They had each been shot with a shotgun from close range. Their telephone had been unplugged from its socket in the wall.

Around 4:00 in the morning of the twenty-first Edison reported to the Dawson police that he had been robbed. They placed Edison in the Terrell County Hospital for observation. When they heard of the Picketts' murders, they questioned Edison in the hospital. He volunteered that he had fired a gun, but not a shotgun, on the previous night.

The police investigation revealed that Edison had threatened to kill "some two legged deer" on the day of the Picketts' murders. He had also stated that he "would be the death" of the Picketts, and that he would kill "the son-of-a-bitches" with a shotgun. He often complained that he had to do all of the work around the house.

The police also discovered that Edison was the last person seen with the Picketts. A cab driver dropped him off at the Picketts' home at 7:00 p.m. on the night of the murders. As Edison left the cab, he told the driver that Mr. Pickett was not really paralyzed; he was just drunk.

Edison appeared at the Picketts' neighbor's house between 11:00 p.m. and midnight on the night of the murders. He "flashed" a large amount of cash while he was there. He was not wearing his glasses at the time. Police found a pair of glasses very similar to his on the floor of the Picketts' home near their lifeless bodies.

1. The evidence that Edison had threatened the Picketts on a number of occasions, twice on the day of the murder, that he was the last person seen with the Picketts, that his glasses were found on the floor of the Picketts' home, and that he had fired a gun on the night of the murders adequately supports the jury verdict under the standard established in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Edison asserts that a defendant with a long history of mental illness, a criminal record, and a previous acquittal on a criminal charge on the grounds of insanity, should be entitled to a bifurcated trial on the issues of factual guilt and insanity.

The legislature has provided that a plea of incompetency to stand

trial entitles a defendant to a trial on the issue of his present sanity before a special jury. OCGA § 17-7-130. Where a defendant pleads insanity at the time of the offense, however, the legislature has provided a special verdict for the jury to consider in its deliberations concerning guilt-innocence. OCGA § 17-7-131. Insanity at the time of the trial is determined prior to trial on the merits, while a jury weighs the defendant's sanity at the time of the offense as a part of its normal function in the guilt-innocence phase of the trial. As OCGA § 17-7-131 has been ruled constitutional, *Clark v. State*, 245 Ga. 629 (266 SE2d 466) (1980), we find no error.

3. Edison contends that the trial court erred in allowing the state to read into evidence his testimony at his earlier trial for the murder of the Picketts that resulted in a hung jury.

Edison chose to not testify at the second trial. The state introduced his previous testimony into evidence to set out conflicts between his version of the events surrounding the murder and the versions of the state's witnesses. A defendant who testifies on his behalf waives his privilege against self-incrimination to the extent of that testimony. We find no error. *Dumas v. State*, 63 Ga. 600 (1879); see also *United States v. Grunewald*, 164 FSupp. 644 (SDNY, 1958).

4. Edison finally argues that the trial court erred in allowing Danny Eubanks to testify, as the substance of his testimony was inadmissible hearsay and violated Edison's right to confront witnesses.

Eubanks recounted statements made by two parties. He related the telephone number from which, according to the operator, the telephone call originated. He also related some statements made by people at the source of the call.

The value of the testimony as to the number given to him by the operator rested, to a great extent, upon the operator's veracity and ability to relate such information. The value of all of Eubanks' testimony in damaging the defendant's case by showing the source and contents of the telephone call was not so great, however, as to render the admission of any hearsay evidence harmful, particularly in light of the evidence that the Picketts' telephone had been pulled out of its socket, and in light of the judge's charge to the jury instructing them that the testimony was admitted not for the truth of the statements, but only for the jury's consideration.

*Judgment affirmed. All the Justices concur, except Gregory and Bell, JJ., who concur in the judgment only.*

DECIDED JUNE 11, 1986.

*Collier & Bishop, Joe C. Bishop*, for appellant.
*Charles M. Ferguson, District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Staff Assistant Attorney Gen-*

*eral,* for appellee.