## A95A0903. WOODWARD v. THE STATE.
### (465 SE2d 511)

RUFFIN, Judge.

Glenda Jo Woodward was indicted for felony obstruction of a law enforcement officer under OCGA § 16-10-24 (b). She appeals the judgment of conviction and sentence and the denial of her motion for new trial. For reasons which follow, we reverse.

The evidence at trial showed that during the day of July 8, 1993, Woodward called the Gwinnett County Sheriff's Department several times to arrange for personal delivery of certain papers to Sheriff James Carsten. Eventually she spoke with Deputy J. Forest who advised her that Sheriff Carsten could not receive the papers personally and that per Carsten's orders, Woodward could either deliver them to Deputy Forest on the second floor of the building housing the sheriff's department, or leave them at the desk in the lobby of the administrative offices of the sheriff's department. The record shows that Woodward's manner during the calls devolved into belligerence.

When Woodward arrived at the sheriff's department to deliver the papers, Deputy Edward Marsden was on duty. Marsden testified he went looking for Woodward because he heard she was in the building. Woodward was writing a note to the sheriff when she was approached by Marsden and arrested. She was writing the note after the clerk at the window asked "[m]ay I help you?" Marsden himself admitted that when he arrived Woodward was simply "at the window writing on an envelope." Shortly thereafter, Deputy Marsden arrived and insisted that Woodward immediately leave the paperwork with him and exit the building. Woodward subsequently produced identification as Marsden requested but did not leave, even after a second order by Marsden to do so. Marsden again demanded that Woodward leave and told her she would be arrested if she did not. Woodward then asked Marsden to call Sheriff Carsten before arresting her to confirm that she was simply following the sheriff's instructions. Although Marsden testified that his grounds for arresting Woodward at that point would have been criminal trespass or disorderly conduct,

he admitted and the clerk testified that the disorderly conduct occurred after Marsden put his hands on Woodward and arrested her. We note parenthetically that Marsden refused to answer Woodward's question about the grounds for her arrest.

When Woodward did not leave, Marsden arrested her and attempted to physically remove her from the lobby window. Woodward resisted the arrest and an altercation ensued during which she kicked and bit Marsden. Woodward was cited for disorderly conduct and indicted for obstruction of a law enforcement officer.

1. Woodward contends the trial court erred in denying her motion for new trial because the evidence was insufficient to show that she obstructed a law enforcement officer in the lawful discharge of his duties. We agree.

An essential element of the offense of obstruction of an officer is that the State prove beyond a reasonable doubt that the obstruction occurred while the officer was in "the lawful discharge of his official duties." OCGA § 16-10-24 (b). See *Powell v. State*, 192 Ga. App. 688 (3) (385 SE2d 772) (1989). "[A] police officer is *not* discharging his lawful duty when he arrests an individual without reasonable or probable cause." *Brown v. State*, 163 Ga. App. 209, 212 (4) (c) (294 SE2d 305) (1982). If there is probable cause to believe a person committed a crime, if a crime is committed in the officer's presence or within his knowledge, or if there is a likely failure of justice, an arrest without a warrant is authorized; otherwise it is not. OCGA § 17-4-20. See *Smith v. State*, 84 Ga. App. 79 (65 SE2d 709) (1951).

Here, there is no evidence that Deputy Marsden was in the lawful discharge of his duties when he arrested Woodward. Marsden testified that there was no sign warning of a restricted area which would have prevented Woodward from entering the sheriff's department and that with the exception of one secured area, the facility is a public building. It is undisputed that the administrative offices and the lobby of the sheriff's department are public areas of a county facility to which access is not limited. Nor was there a criminal trespass warrant prohibiting Woodward's entry.

Although the State contends that Marsden was in the lawful discharge of his duties when he arrested Woodward because security of the building was one of his responsibilities, there was no evidence at trial that Woodward presented a security threat, that it was unlawful for her to be in the building, or that Deputy Forest had instructed her not to enter the second floor. Nor did the State show that Marsden had the authority to demand that she leave. Compare *Powell*, supra.

Moreover, a lawful arrest was not in progress when Woodward resisted Marsden for disorderly conduct. A belligerent telephone call earlier in the day, without more, is not disorderly conduct and does not constitute probable cause for an arrest. In order for the jury to

determine whether there was sufficient evidence to convict Woodward of obstruction of a law enforcement officer, it had to determine if there was sufficient evidence to prove that Woodward's arrest for disorderly conduct was lawful. This the jury could not do because "no [county] ordinance was offered in evidence. . . . Courts cannot take judicial cognizance of the existence of [county] ordinances. [Cit.]" *Smith v. State*, supra at 82. Although the jury was charged on the content of Gwinnett County's disorderly conduct ordinance, a jury charge is not evidence. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, 2d ed., p. 11, which sets forth those items constituting evidence. The jury's concern about why Woodward was arrested was evidenced by the note it sent the court asking: "May we have, in writing, a legal description of a lawful arrest?" In response, the court instructed the jury to "rely on the instructions read to you as the complete body of law applicable to the case. . . ."

As there is no evidence showing Woodward's arrest was lawful, she "had the right to resist with all force necessary for that purpose. [Cit.]" *Smith v. State,* supra at 81. Accordingly, "the conviction of [Woodward] for the offense of obstruction of a law enforcement officer was not authorized by the evidence. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)." *Brooks v. State*, 206 Ga. App. 485, 489 (2) (425 SE2d 911) (1992).

2. Given our holding above, we need not address Woodward's remaining enumerations of error.

*Judgment reversed. Birdsong, P. J., Johnson, Blackburn and Smith, JJ., concur. Beasley, C. J., McMurray, P. J., Pope, P. J., and Andrews, J., dissent.*

BEASLEY, Chief Judge, dissenting.

I first note that the transcript does not record the circumstances of the court's written answer to the jury question, but the record contains the court's written response, indicating that the court had discussed the jury's question with counsel before responding that the jury should rely on its collective recollection of the court's charge as the complete body of law applicable to the case.

The question is whether defendant was committing the crime of disorderly conduct in violation of the Gwinnett County ordinance in deputy sheriff Marsden's presence when he arrested her. Whether she was committing criminal trespass, given the evidence, is not relevant at this stage, because that is not what he arrested her for and charged her with, and the jury was only charged with the elements of disorderly conduct. The deputy did testify that when he finally advised her that she would have to leave the building or be placed under arrest, at that point he would have arrested her for criminal trespass or disorderly conduct. Defendant asked for a jury charge on criminal trespass,

which was not given, but did not seek a charge on disorderly conduct.

The record does not contain a certified copy of the ordinance, but it is set out in the state's Request to Charge No. 2 and identified as Section 9-1005 of the Code of Gwinnett County. The court gave this charge, and it was not objected to by either counsel except that defense counsel noted that an immaterial portion of it had been left out. A copy of the citation, which referenced this Code section, was admitted into evidence at trial. See *Mayor &c. of Savannah v. TWA, Inc.*, 233 Ga. 885, 886 (214 SE2d 370) (1975); *Williamson v. City of Tallapoosa*, 238 Ga. 522, 525 (233 SE2d 777) (1977).

The court charged: "Disorderly conduct is defined as follows: It shall be unlaw [sic] for any person or persons to create any disturbance that is contrary to the peace and tranquility enjoyed by the people, or inferred — or interfere with the lawful movement of a vehicular [sic] or disobey a lawful command from a law enforcement officer in the lawful performances of his duties, or engage in any of the following acts:

"One, any person who shall act in a violent or an argumentative manner to another person whereby that person is placed in fear of bodily harm, or property of another is placed in danger of being damaged or destroyed."

The only prohibited act of disorderly conduct which was at issue in this case was disobedience of a lawful command from a law enforcement officer in the lawful performance of his duties. It is this alleged act which constituted the basis for the arrest, which when attempted led to defendant's holding on to the counter and then screaming, biting the officer, breaking the chain on his neck, ripping his badge off, and trying to bite him again before she was subdued by five officers. The commission of violence to the person of the officer, by biting him on the hand, is what constituted the knowing and wilful obstruction of the officer for which defendant was indicted and convicted pursuant to OCGA § 16-10-24 (b), a felony.

We are obliged to consider the evidence in the light most favorable to the jury's verdict. *Wilkie v. State,* 216 Ga. App. 557 (455 SE2d 103) (1995). The sheriff's office was advised by defendant by phone that she wanted to deliver some papers to the sheriff personally. She called several times that day and talked to his secretary but was not satisfied with the responses. The next time she called, the secretary referred her to deputy Forest, the sheriff's administrator and personal assistant, who often handles people who cannot be served in the ordinary course. He told her the sheriff was not present and gave her the options of leaving her papers at the front desk on the first floor or bringing them to him on the second floor and he would deliver them to the sheriff. She indicated she was not satisfied with these options and became loud and abusive and advised she was

going to make delivery to the sheriff under any circumstances. He told her that was not an option, the conversation deteriorated, and he finally hung up.

Ms. Woodward did not come while deputy Forest was there, so when he left to go home sometime after the normal business day ended at 5:00, he directed the deputy at the front desk that he should receive her papers if she came in, and he told him that she had been belligerent on the phone.

Deputy Marsden was on duty at the front desk on the first floor when Ms. Woodward came, but he did not see her until he was called up to the second floor at about 8:45 p.m. because she was there. He had been instructed to receive her papers, but that he was not to permit her access to the second floor lobby because she had been harassing the staff by phone. She had gained access by the stairs rather than by the public elevator. The stairwell was for restricted use with a sign that it was for authorized personnel only.

Marsden, whose responsibilities included security of the building, did not know Ms. Woodward, so when he approached her thinking she was the woman writing on an envelope at the window, he asked for identification. She did not respond until he asked the fourth time. She told him in a challenging manner that he knew who she was and that if he did not, "[he] had no excuse for being." He asked if she had some papers for the sheriff and told her he had been authorized to accept them and to come down to the first floor. At first she ignored him. Although he told her this two or three times, including that she could come back another day if she did not want to leave the papers with him for the sheriff, she kept insisting on seeing the sheriff personally.

Finally, he told her that whether she left the papers with him or brought them back another day, she would have to leave the building. She refused to comply, so he told her she would have to leave or he would arrest her. She refused, so he told her she was under arrest. She then screamed, grabbed the window ledge with both hands and would not let go, and then bit the officer and so on until subdued. He testified that he would not have arrested her if she had given him the papers or left them at the desk on the second floor. He charged her with disorderly conduct.

Whether a defendant impeded an officer in carrying out his lawful duties is usually a jury question. *Logan v. State*, 136 Ga. App. 567 (222 SE2d 124) (1975).

Defendant was arrested for refusing to leave the public building, after having been directed to do so either after transacting her business in one of the manners offered or to await a day when the sheriff was present. Having already exhibited earlier in the day a harassing, belligerent and abusive attitude towards sheriff's department person-

nel in connection with this delivery, she had no right to remain on the premises until the sheriff returned at some unknown time. It was lawful for the deputy, in fulfilling his duty to maintain security in the building, see *Powell v. State*, 192 Ga. App. 688, 689 (3) (385 SE2d 772) (1989), to direct her to leave because she refused to conduct her lawful business in a reasonable manner. "If the . . . arrest was legal, [as it was in this case, defendant] had no right whatever to resist it. . . ." *Smith v. State*, 84 Ga. App. 79, 81 (65 SE2d 709) (1951). See also *Onwuzuruoha v. State*, 217 Ga. App. 645, 646 (458 SE2d 675) (1995); *Mapp v. State*, 204 Ga. App. 647, 650 (6) (420 SE2d 615) (1992); *Johnson v. State*, 201 Ga. App. 88 (1) (410 SE2d 189) (1991); *Whaley v. State*, 175 Ga. App. 493, 494 (333 SE2d 691) (1985).

Thus, the conviction was authorized by the evidence. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

I am authorized to state that Presiding Judge McMurray, Presiding Judge Pope, and Judge Andrews join in this dissent.

DECIDED DECEMBER 5, 1995.

*Leslie J. Cardin*, for appellant.
*Daniel J. Porter, District Attorney, George F. Hutchinson III, Assistant District Attorney*, for appellee.