## A03A2540. REEDMAN v. THE STATE.
(593 SE2d 46)

ELLINGTON, Judge.

A Fulton County jury found David Reedman guilty of theft by receiving a stolen auto, OCGA § 16-8-7. He appeals pro se, raising 17 enumerations of error, including the general grounds.[1] Finding no reversible error, we affirm.

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

---

[1] Reedman represented himself at trial and in a previous trial on other charges arising from the same accusation. On February 25, 2002, the State accused Reedman of theft by receiving, obstruction, and fleeing. He was convicted of obstruction and fleeing on May 31, 2002, but the court entered a mistrial on the theft by receiving count. Reedman appealed his convictions, but his appeal was dismissed when he failed to file a brief as ordered. He was retried on the theft by receiving count and convicted on February 27, 2003.

elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citations and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). Viewed in this light, the record reveals the following facts.

During the early morning of October 4, 2001, police officers observed a car speeding on Roswell Road in Fulton County. When one of the officers attempted a traffic stop, the driver sped away. The officers pursued the driver down a dead-end street where he stopped, jumped out of the car, and fled on foot. The officers caught the driver, David Reedman, whom they positively identified at trial.

The car Reedman was driving had been reported stolen a week earlier by its owner. The owner testified that her car had been stolen from her driveway during the night. When she reclaimed her car, it was a mess — it was full of trash, disposable toiletry items, and clothes — and "looked like someone had been living in it." The owner also discovered an unfamiliar set of car keys that "looked like dealership keys." The owner's insurer considered the car a total loss because the thief had ruined the car's transmission and axle.

The State also introduced similar transaction evidence establishing that Reedman was previously convicted of possessing cars that were stolen from their owners' homes during the night. In those cases, he had either attempted to elude arrest or to deceive his arresting officers as to his right to possess the cars. Reedman left trash and clothes in the cars, wrecked one, and had obtained keys to fit others.

Reedman testified in his own defense, explaining that he fled from his arresting officers because he believed he was in "another harassment situation." Although he admitted driving the car and fleeing, he refused to answer any of the prosecutor's questions about how he came to be in possession of the car on the ground his answers would incriminate himself. Even after the court instructed him to answer,[2] Reedman continued to refuse to participate in cross-examination.

---

[2] "A defendant who testifies on his behalf waives his privilege against self-incrimination to the extent of that testimony." *Edison v. State*, 256 Ga. 67, 69 (3) (344 SE2d 231) (1986). By taking the stand and testifying that he had driven the car, Reedman waived his privilege and could be compelled to answer questions regarding his possession of the car. *Scott v. State*, 270 Ga. 93-94 (2) (507 SE2d 728) (1998).

1. Reedman challenges the sufficiency of the evidence, contending there is no evidence that he knew, or should have known, that the car was stolen.

(a) OCGA § 16-8-7 (a) provides that a person "commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner." Knowledge that the car was stolen is an essential element of the crime of theft by receiving. *Harris v. State*, 239 Ga. App. 723, 724 (521 SE2d 864) (1999). The jury may infer that knowledge "from circumstances which would excite suspicion in the mind of an ordinary prudent man." (Citations and punctuation omitted.) *Parrott v. State*, 188 Ga. App. 564, 566 (373 SE2d 828) (1988). In this case, the jury was authorized to infer Reedman's guilty knowledge from his flight and from the similar transaction evidence adduced. *Priester v. State*, 249 Ga. App. 594, 598-599 (5) (a) (549 SE2d 429) (2001). Further, since Reedman waived his Fifth Amendment privilege to remain silent and testified in his defense,[3] his refusal to answer the prosecutor's questions regarding his possession of the car could also be considered as evidence of his guilty knowledge. See *Cates v. State*, 245 Ga. 30, 33 (1) (262 SE2d 796) (1980) (jury authorized to draw inference of guilt from witness who refused to answer questions under a claim of privilege though he had lost his Fifth Amendment right to refuse to testify).

(b) Reedman also contends he was justified in possessing a stolen car because his arrest was unlawful. He cites no law in support of this proposition. Although an unlawful arrest may serve as a basis to suppress evidence illegally seized, "[a] defendant in a criminal case cannot claim a verdict declaring him to be not guilty on the ground that he was illegally arrested." (Citations omitted.) *Scott v. State*, 123 Ga. App. 675 (2) (182 SE2d 183) (1971). Moreover, the right to object to an unreasonable search and seizure is a privilege personal to the one whose rights have been infringed; consequently, Reedman was not entitled to object to the search and seizure of the victim's car because it was not his property and he had no right of exclusive possession or control over it. *Dutton v. State*, 228 Ga. 850, 851 (1) (188 SE2d 794) (1972). While Reedman may certainly argue that he ran from the police to avoid perceived harassment and not because he knew he possessed a stolen car, it was up to the jury to determine which explanation for his behavior was more credible. The evidence adduced supports the jury's finding that Reedman is guilty beyond a reasonable doubt of theft by receiving a stolen car.

---

[3] See note 2, supra.

2. Reedman contends the trial judge should have granted his motion to recuse on the grounds of bias and partiality. To be disqualifying, the alleged judicial bias "must stem from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his (or her) participation in the case." (Punctuation and footnote omitted.) *Butts v. State*, 273 Ga. 760, 762-763 (3) (546 SE2d 472) (2001). Neither Reedman's brief nor the trial transcript reveals any such source of bias or that the trial judge formed an opinion as to Reedman's guilt or innocence. Because "[t]he burden is on him who asserts error to show it affirmatively by the record," *Roach v. State*, 221 Ga. 783, 786 (4) (147 SE2d 299) (1966), this enumeration is without merit.

3. Reedman enumerates as error the trial court's denial of his motion to suppress, contending that his arresting officers' "opinion testimony as to the speed of the vehicle, was insufficient" probable cause to justify the traffic stop. The opinion testimony of an eyewitness may be used to establish the speed of an automobile. *Nairon v. State*, 215 Ga. App. 76, 78-79 (3) (449 SE2d 634) (1994). Further, evidence that a defendant exceeded the speed limit in violation of the law is sufficient probable cause to justify a traffic stop. *Fuller v. State*, 256 Ga. App. 840, 842 (1) (570 SE2d 43) (2002). We find no error.

4. Reedman contends the trial court denied him due process by arraigning him without proper notice. Yet Reedman's own appellate brief establishes that he waived any valid objection to the sufficiency of notice by appearing at arraignment and entering a not guilty plea.[4] OCGA § 17-7-91 (c) ("The appearance and entering of a plea by the accused shall be a waiver of the notice required in this Code section.").

5. The State introduced similar transaction evidence of Reedman's prior auto theft and entering auto cases to demonstrate his modus operandi: He stole or entered cars late at night, he used a master key of some sort, he lived or slept in the cars, he fled or attempted to flee when discovered, and, when caught, he claimed the police were harassing him. Contrary to Reedman's argument, the prior crimes were sufficiently similar and they were properly admitted to show modus operandi, course of conduct, and bent of mind. *Gardner v. State*, 273 Ga. 809, 810-812 (2), (3) (546 SE2d 490) (2001).

---

[4] Although Reedman stood mute and refused to participate in the arraignment process, the trial court was authorized to enter a not guilty plea on his behalf. *Hardwick v. State*, 231 Ga. 181, 183 (6) (200 SE2d 728) (1973); OCGA § 17-7-94 ("If the person accused of committing a crime, upon being arraigned, pleads 'not guilty' or stands mute, the clerk shall immediately record upon the minutes of the court the plea of 'not guilty,' together with the arraignment; and the arraignment and plea shall constitute the issue between the accused and the state.").

6. The trial court did not err in denying Reedman's plea of former jeopardy. The court retried Reedman following a mistrial on the theft by receiving charge. See note 1, supra. Reedman and the State agree that the mistrial was granted because the jury could not reach a verdict on that count and that further deliberations were "useless." Retrial of a criminal defendant after a mistrial caused by the inability of the jury to reach a verdict does not constitute double jeopardy where there is manifest necessity for declaring a mistrial. *Orvis v. State*, 237 Ga. 6, 8 (2) (226 SE2d 570) (1976). Where the jury is hopelessly deadlocked, as the trial court implicitly found, a mistrial is necessary. Id. We find no error.

7. The record does not support Reedman's claim that he was denied his statutory right to a speedy trial. According to his own brief, Reedman unconditionally withdrew his demand for a speedy trial in order to get a continuance. Reedman failed to comply with OCGA § 17-7-170 and, therefore, cannot invoke the statutory discharge and acquittal provisions of that Code section. *Doehling v. State*, 238 Ga. App. 293, 295 (b) (518 SE2d 137) (1999).

8. Reedman contends the trial court lacked jurisdiction to try him because he had an appeal pending from his obstruction and eluding charges and from the court's grant of a mistrial as to the theft by receiving count. A notice of appeal acts as a supersedeas and generally divests the trial court of jurisdiction to alter or execute a judgment of conviction. OCGA § 5-6-45. Reedman, however, had not been found guilty of theft by receiving so there was no judgment of conviction to appeal. Thus, the notice of appeal did not act as a supersedeas as to that charge. Moreover, "a mistrial is not a final judgment or decision from which appeal will lie, as the cause of action is still pending in the trial court." (Citation omitted.) *McCuen v. State*, 191 Ga. App. 645, 646 (382 SE2d 422) (1989). Consequently, the trial court was not divested of jurisdiction to retry Reedman on the theft by receiving charge.

9. In four related enumerations of error, Reedman contends the trial court erred in either giving or refusing to give certain jury charges.

(a) Several of these claims of error reference charges requested or given in Reedman's *first* trial. His brief either specifically references the first trial, cites to the record of his first trial (which is not before us), or relies on documents which are plainly not a part of this record. To the extent these alleged errors were not committed in the trial of the case before us, they present no justiciable issue for our determination. Reedman had an opportunity to litigate those claims of error in his appeal from his first trial, an appeal which was dismissed because he failed to comply with this Court's rules. A criminal defendant is not entitled to a second direct appeal from his judgment

of conviction. *Richards v. State*, 275 Ga. 190, 191 (563 SE2d 856) (2002).

(b) Reedman contends the trial court erred in giving the State's Request to Charge Nos. 2, 5, 19, and 21 in the instant case. We have reviewed each of these charges and find them to be correct statements of the law. Request Nos. 5, 19, and 21 pertain to the theft by receiving stolen property charge and provide that the jury may infer the defendant's knowledge that the car was stolen from his contradictory statements,[5] from the character and conduct of the person from whom the car was received,[6] and from the manner in which the car was disposed.[7] Request to Charge No. 2 pertains to Reedman's argument that his arrest was illegal. The court correctly charged the jury that it is unlawful to wilfully refuse to stop when a police officer signals a person to stop. OCGA § 40-6-395 (a); *Reynolds v. State*, 209 Ga. App. 628, 629-630 (1) (434 SE2d 166) (1993). We find no error.

10. Reedman contends the trial court erred in excluding documentary evidence of the police communication logs from the night of his arrest. He contends these records would impeach and discredit his arresting officers, explain his flight, and support his justification defense. Pretermitting whether these records were relevant when an unlawful arrest would not justify Reedman's possession of a stolen car, see Division 1 (b), supra, Reedman failed to make a proffer at trial of the contents of the documents, failed to make the disputed documents a part of the record, and failed to demonstrate in his appellate brief exactly how the information contained in the police logs would either impeach or discredit his arresting officers' testimony. As we have held,

> Where the error alleged is that certain evidence has been wrongfully excluded, the rule is well settled that there must have been a proffer or offer of a definite sort that both courts can know whether . . . the evidence really exists. . . . In the absence of this information, the assignment of error is so incomplete as to preclude its consideration by this court.

(Citations, punctuation and footnote omitted.) *Wand v. State*, 230 Ga.

---

[5] Contradictory statements by the defendant coupled with other evidence authorize the jury to find that the defendant received the stolen property with knowledge that it had been stolen. *Austin v. State*, 89 Ga. App. 866, 869 (2) (81 SE2d 508) (1954).

[6] The character of the person from whom the goods are received is a factor from which the defendant's knowledge may be deduced. *Prather v. State*, 116 Ga. App. 696 (1) (158 SE2d 291) (1967).

[7] Evidence showing the manner in which the defendant disposed of the vehicle is relevant to establish the guilty knowledge essential to support a conviction for theft by receiving stolen property. *Callahan v. State*, 148 Ga. App. 555, 557 (4) (251 SE2d 790) (1978).

App. 460, 464 (2) (e) (496 SE2d 771) (1998). Accordingly, this enumeration of error presents nothing for this Court to review.

11. (a) Reedman contends the trial court should not have instructed him to answer the prosecutor's questions to him on cross-examination when the answers would incriminate him and that doing so constituted an improper comment on the evidence in violation of OCGA § 17-8-57. However, the record reveals the trial court properly informed Reedman that a defendant who takes the stand and testifies in his own behalf waives the right to remain silent to the extent of that testimony. See note 2, supra. This was not a comment on the evidence, but a proper legal instruction.

(b) Reedman also contends the trial judge improperly commented on the evidence when, during closing argument, he stopped Reedman from arguing that his flight from an allegedly unlawful arrest acted as a justification to the crime of possessing a stolen car. The judge warned Reedman he was not arguing the correct law and instructed the jurors that they would receive the applicable law from the court during the final charge.

"Unquestionably, the jury is to receive the law from the court, not from counsel. However, counsel have every right to refer to applicable law in argument; it is law that the court will not charge the jury that counsel is prohibited from presenting." (Citation and emphasis omitted.) *Kirkland v. State*, 271 Ga. 217, 219 (3) (518 SE2d 687) (1999). Reedman was doing more than simply arguing that he did not know the car was stolen. He was attempting to justify his possession of a stolen car by arguing law that was incomplete, inaccurate, and likely to confuse the jury.[8] By cautioning Reedman as he did, the judge was simply charging on a point of law and not commenting on the evidence. *Hendrix v. State*, 230 Ga. App. 604, 606 (3) (497 SE2d 236) (1998). We find no error.

---

[8] A claim of unlawful arrest does not assert an affirmative defense to a charge of obstruction. Rather, it asserts that the State has failed to prove an essential element of the offense – a lawful arrest. *Green v. State*, 240 Ga. App. 774, 776 (1) (525 SE2d 154) (1999); OCGA § 16-10-24 (a) ("[A] person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor."). In an obstruction case, the trial court is authorized to charge the jury that a defendant may resist an unlawful arrest to the extent necessary to prevent what is essentially an assault by the officer. *Woodward v. State*, 219 Ga. App. 329, 331 (1) (465 SE2d 511) (1995). Here, Reedman was charged with theft by receiving a stolen auto. OCGA § 16-8-7 (a). The legality of his arrest is not an essential element of the crime the State must prove. Id. Nor does an unlawful arrest excuse, justify, or serve as the basis for suppressing evidence of Reedman's possession of a stolen car. See Division 1 (b), supra. Of course, Reedman could argue, as he did extensively, that he fled from the police because he believed he was being harassed and not because he knew the car was stolen. The court charged the jury that the State must prove the defendant knew the car was stolen beyond a reasonable doubt.

12. Reedman contends the State exercised its peremptory strikes in a racially discriminatory manner to remove three African-Americans from the jury in violation of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). As we have held, a trial court's decision on a *Batson* motion "rests largely upon assessment of the prosecutor's state of mind and credibility; it therefore lies peculiarly within a trial judge's province. Accordingly, we review the trial court's denial of the *Batson* motion under a clearly erroneous standard." (Punctuation and footnotes omitted.) *Jones v. State*, 261 Ga. App. 698, 701 (2) (583 SE2d 546) (2003).

The prosecutor struck Juror No. 3 because the juror expressed doubts and concerns about the fairness of a legal system that would allow Reedman to represent himself; the prosecutor struck Juror No. 6 because the juror was extremely nervous, confused, and had problems following the voir dire questions; the prosecutor struck Juror No. 15 because the juror had been convicted in Fulton County for driving under the influence of alcohol and expressed negative feelings toward law enforcement. Based on these explanations, we conclude the trial court was not clearly erroneous in denying Reedman's *Batson* challenge because the prosecutor gave race-neutral reasons for the strikes and these reasons were not a pretext for purposeful discrimination. *Jones v. State*, 261 Ga. App. at 701 (2).

13. Reedman contends the trial court erred in imposing consecutive sentences for his misdemeanor convictions for obstruction and fleeing. Whether those sentences are legal is an issue which is not properly before us. As Reedman admits, the convictions upon which those sentences were based were the result of his previous trial. He had an opportunity to litigate those claims of error in his appeal from that trial, an appeal which was dismissed because he failed to comply with this Court's rules. A criminal defendant is not entitled to a second direct appeal from his judgment of conviction. *Richards v. State*, 275 Ga. at 191.

14. In his final enumeration of error, Reedman contends the trial court erred in sentencing him as a recidivist under OCGA § 17-10-7 (a) because his prior convictions were "not in his name," were made without benefit of counsel, or were overturned on appeal. The record plainly shows, however, that one of Reedman's prior convictions was a guilty plea to a 1998 charge against "David Reedman" for entering an auto. This single, prior felony conviction is sufficient to authorize recidivist punishment. OCGA § 17-10-7 (a); *Scott v. State*, 216 Ga. App. 692, 697-698 (8) (455 SE2d 609) (1995) (physical precedent only). The certified copies of the plea reveal that Reedman was represented by counsel and signed his own name to the plea documents. Thus, the State was entitled to a presumption of regularity and the burden shifted to Reedman to show an infringement of his rights or a

procedural irregularity in the plea. *Nash v. State*, 271 Ga. 281, 284 (519 SE2d 893) (1999). This he failed to do. Consequently, Reedman has failed to demonstrate any error in his sentencing. Id.

*Judgment affirmed. Blackburn, P. J., and Phipps, J., concur.*

DECIDED DECEMBER 19, 2003 —
RECONSIDERATION DISMISSED JANUARY 15, 2004 ▮▮▮▮

David Reedman, *pro se.*

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Rewa C. Collier, Assistant District Attorneys*, for appellee.