## A10A1052. SIDNER v. THE STATE.
(696 SE2d 398)

ANDREWS, Presiding Judge.
On appeal from his conviction for terroristic threats and obstruction of a police officer, Walter Sidner argues that the evidence

---

[7] *Thompson v. State*, 271 Ga. 105, 107 (1) (519 SE2d 434) (1999).
[8] *Jones v. State*, 198 Ga. App. 377, 378 (401 SE2d 584) (1991).

was insufficient and that the trial court's charge to the jury on terroristic threats did not conform to the indictment. We find that the evidence was insufficient as to both terroristic threats and obstruction. We therefore reverse Sidner's conviction.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). We review a trial court's denial of a defendant's motion for directed verdict of acquittal under the same standard. *Williams v. State*, 237 Ga. App. 814, 815 (1) (515 SE2d 875) (1999).

So viewed, the record shows that on Thanksgiving 2008, Sidner and his family were at home in Cobb County when they heard the first of a series of loud explosions. It appeared that fireworks were being lit at a house down the street and exploding over the trees. Sidner went outside and called 911. The transcript of his call was played for the jury as follows:

> [OPERATOR]: Cobb County 911, what's the — your emergency?
>
> [SIDNER]: Well, that's my emergency. It's the second time in a month I've called on people shooting fireworks at this time of night. I'm giving you guys ten minutes to get here, or else I'm going to take products [sic] into my own hand. I'm going to go shoot those motherfuckers right now. I'm at 1037 Stoneridge Drive. If you don't get here[,] I'm going to go out and kick somebody's fucking ass.
>
> [OPERATOR]: Hello?

Sidner had called 911 concerning fireworks the previous Halloween, but police had not responded.

When officers arrived at the scene, Sidner appeared at the door, unarmed and in his pajamas, pointed, and said, "Two houses from the corner, up there past the stop sign." Sidner said that he knew that police would only come out "if he threatened somebody." When an officer told Sidner that they were just fireworks and that he needed to deal with it, Sidner demanded, "[D]o I have to take a baseball bat and hit someone before you guys will do anything?" In

the struggle that ensued, Sidner pushed one officer against the house, and another officer suffered an injury to his right knee.

Sidner was charged with two counts of terroristic threats, one count of aggravated battery, and three counts of obstruction with violence. After the trial court denied Sidner's motion for directed verdict, a jury found him guilty of the terroristic threats as well as the lesser included offenses of obstruction without violence, but acquitted him of the battery charge. The trial court convicted Sidner and sentenced him to five years probation for the threats and six months to serve for the obstruction. This appeal followed.

1. OCGA § 16-11-37 provides in relevant part:

> (a) A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence . . . with the purpose of terrorizing another or of causing the evacuation of a building, place of assembly, or facility of public transportation or otherwise causing serious public inconvenience or in reckless disregard of the risk of causing such terror or inconvenience. No person shall be convicted under this subsection on the uncorroborated testimony of the party to whom the threat is communicated.
>
> . . .

This Court has held that the crime of terroristic threats "focuses solely on the conduct of the accused and is completed when the threat is communicated to the victim with the intent to terrorize." *Armour v. State*, 265 Ga. App. 569, 571 (594 SE2d 765) (2004). "That the message was not directly communicated to the victim would not alone preclude a conviction *where the threat is submitted in such a way as to support the inference that the speaker intended or expected it to be conveyed to the victim*." (Emphasis in original.) Id.

In *Stephens v. State*, 271 Ga. App. 509 (610 SE2d 143) (2005), this Court reversed a conviction for terroristic threats when no evidence supported an inference that the defendant intended or expected that his written threat to kill his supervisor, sent to the office's personnel department, would be communicated to the supervisor, and when his only purpose in making the threat was to obtain a change in employment. Likewise, there is no evidence in the record before us to support an inference that Sidner's threats were directed at the 911 operator or police, that Sidner had any particular victim in mind when he communicated his threats to them, or that Sidner intended or expected that his threat would be conveyed to anyone besides them. The clear and oft-repeated purpose of Sidner's threats was not to terrorize his neighbors, but rather to obtain a police

response to disturbances on his block. It follows that Sidner's conviction for terroristic threats must be reversed. Id.; compare *Brown v. State*, 298 Ga. App. 545 (680 SE2d 579) (2009) (defendant's threats against his wife and her mother were communicated to his lawyer with the intent that the lawyer communicate them to the victims); *Armour*, 265 Ga. App. at 571-572 (defendant yelled threat outside door of victim's house); *Shepherd v. State*, 230 Ga. App. 426 (496 SE2d 530) (1998) (defendant tells listener to tell victim that he was going to hurt victim, and listener notifies victim immediately).

2. In light of our decision in Division 1, we need not reach Sidner's remaining assertion of error concerning the trial court's charge on terroristic threats.

3. It also follows that Sidner's conviction for obstruction must be reversed.

In Georgia, a person has the right to resist an unlawful arrest.

A police officer is *not* discharging his lawful duty when he arrests an individual without reasonable or probable cause. If there is probable cause to believe a person committed a crime, if a crime is committed in the officer's presence or within his knowledge, or if there is a likely failure of justice, an arrest without a warrant is authorized; otherwise it is not.

(Emphasis in original; citations and punctuation omitted.) *Woodward v. State*, 219 Ga. App. 329, 330 (1) (465 SE2d 511) (1995). As we have held above, we see no evidence in the record that would authorize an inference that the arresting officers had reasonable or probable cause to believe that Sidner intended to communicate his threats to a victim. Put more generally, "the facts and circumstances within the knowledge of the officers and of which they had reasonably trustworthy information were not sufficient to warrant a prudent man to believe that defendant had committed an offense." *Brooks v. State*, 206 Ga. App. 485, 488 (2) (425 SE2d 911) (1992). As a result, Sidner "had the right to resist [the arrest] with all force necessary for that purpose." *Woodward*, 219 Ga. App. at 331.

*Judgment reversed. Ellington and Doyle, JJ., concur.*

DECIDED JUNE 9, 2010 — ▉

*McKenney & Froelich, William J. McKenney, Robert D. Hyden*, for appellant.

*Patrick H. Head, District Attorney, Benjamin M. First, Dana J. Norman, John R. Edwards, Assistant District Attorneys*, for appellee.