**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 27, 2014

# In the Court of Appeals of Georgia

A14A0068. BOATRIGHT v. THE STATE.

DILLARD, Judge.

Richard Boatright was convicted by a jury on two counts of obstruction of a police officer after he resisted while officers took him into custody for the purpose of transporting him to an emergency facility to undergo an involuntary mental-health examination. Boatright filed a motion for new trial in which he asserted, *inter alia*, that the evidence was insufficient to support his convictions because the officers were not acting lawfully in detaining him and, consequently, he was entitled to offer resistance. The trial court denied his motion, and Boatright appeals this decision. Because we agree with Boatright that the officers were not acting with lawful authority, we reverse.

Viewed in the light most favorable to the verdict,[1] the evidence adduced at trial shows that during the early morning hours of his birthday, Boatright was at home drinking alcohol and feeling depressed. He telephoned the Garden City Police Department to request a person to speak with about his problems and/or a resource number to call, but was advised that no one was available.

The police dispatcher nonetheless reported Boatright's call to the lieutenant on duty and relayed a "possible suicidal person at [Boatright's] residence." And based upon that information, the lieutenant set up a temporary "command post" in Boatright's neighborhood and assigned several other officers, as well as emergency medical personnel, to this post.[2]

The lieutenant thereafter telephoned Boatright from the command post and had a "fairly lengthy" conversation with him. Although Boatright disputes the lieutenant's summary of that discussion, the lieutenant testified that Boatright was "severely depressed" and having suicidal thoughts, and—admittedly paraphrasing—claimed that Boatright wanted the lieutenant to "put him out of his misery." The lieutenant deduced from Boatright's manner that he was "familiar with the concept of suicide

---

[1] *See Pendleton v. State*, 317 Ga. App. 396, 397 (731 SE2d 75) (2012).

[2] The lieutenant was trained in crisis intervention.

by cop"[3] and thus became concerned. The lieutenant's stated goal during the conversation was to "say anything" necessary to develop trust and rapport, so as to draw Boatright out of his home and take him into custody for an emergency mental-health examination.

Eventually, Boatright agreed to go outside on the condition that the lieutenant came to his home alone, so that the two of them could speak in person. The lieutenant then drove from the command post to Boatright's house with two additional officers in the back of his vehicle. Boatright walked down his driveway as the lieutenant drove up and, after approaching him alone and confirming that he did not have any visible weapons, the lieutenant immediately signaled for the other officers to take Boatright into custody. The other officers quickly exited the lieutenant's vehicle and immediately placed Boatright into handcuffs.

Apart from repeatedly calling the lieutenant a liar, Boatright was, by all accounts, calm and cooperative upon the lieutenant and the other officers' arrival at his residence. Boatright made no statements about hurting himself or others and it is

---

[3] *See* Black's Law Dictionary 1571 (9th ed. 2009) (defining "suicide-by-cop" as "[a] form of suicide in which the suicidal person intentionally engages in life-threatening behavior to induce a police officer to shoot the person.").

undisputed that he had neither committed, nor was he suspected of committing, a crime.

Then, after Boatright was handcuffed, two additional officers were called from the command post to transport him to the hospital. And while he was passively resistant, Boatright was initially placed into the patrol car without incident. But after noticing that he was holding a flashlight, the transporting officers became concerned that Boatright had not been thoroughly searched when he was taken into custody. As a result, the officers stopped the patrol car and removed Boatright from the vehicle to search him yet again. However, as the officers attempted to return him to the backseat of the vehicle, Boatright became agitated and refused to comply. And as one officer attempted to force him into the car, Boatright kicked her in the chest while making a derogatory comment. He also kicked the second officer who took over the efforts to restrain him. The officers thereafter placed Boatright in leg shackles and he was taken to the hospital and involuntarily admitted.

Boatright was subsequently charged with two counts of obstruction of a law-enforcement officer for his acts of kicking the officers. He represented himself during

trial and maintained throughout the proceedings that the officers were not acting in the lawful discharge of their duties when they placed him into custody.[4]

The jury ultimately convicted Boatright of two counts of obstruction of a police officer. He then filed a motion for new trial in which he asserted, *inter alia*, that the evidence was insufficient to support his convictions. Specifically, Boatright argued that the officers failed to follow the proper statutory procedure to take him into custody for an involuntary mental-health evaluation and, therefore, he was legally authorized to use reasonable force to resist their efforts. The trial court denied his motion, and this appeal follows.

It is well established that "[a]n essential element of the offense of obstruction of an officer is that the State prove beyond a reasonable doubt that the obstruction occurred while the officer was in the lawful discharge of his official duties."[5] Thus,

---

[4] Boatright also asserted that he suffers from degenerative disc disease and feared physical harm when one of the officers pushed on his head in order to place him in the patrol car.

[5] *Land v. State*, 259 Ga. App. 860, 863 (2) (578 SE2d 551) (2003) (punctuation omitted); *accord Woodward v. State*, 219 Ga. App. 329, 330 (1) (465 SE2d 511) (1995); *see also* OCGA § 16-10-24 (b)("Whoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his official duties by offering or doing violence to the person of such officer or legally authorized person is guilty of a felony and shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years.").

the determinative question presented in this appeal is whether the officers' act of taking Boatright into custody for the purpose of effecting an involuntary mental-health evaluation comported with their lawful authority.[6] If the officers were not legally authorized to take Boatright into custody, then he had the right to "resist with all force necessary for that purpose."[7]

We begin our analysis by noting that any seizure of a person—even the taking of a person into civil custody[8]—is governed by the Fourth Amendment to the United

---

[6] The trial court held, and the State maintains on appeal, that Boatright waived the argument that his detainment was not statutorily authorized. But because proof that the officers were acting within their lawful authority is an essential element of the crime of obstruction of a law-enforcement officer, the issue was automatically preserved for appellate review. *See* OCGA § 5-5-40 (g); OCGA § 5-6-36 (a); *Lembcke v. State*, 277 Ga. App. 110, 112 (1) (b) (625 SE2d 505) (2005) ("In criminal cases, . . . challenges to the sufficiency of the evidence need not have been raised below, whether at trial or in a motion for new trial.").

[7] *Land*, 259 Ga. App. at 864 (2) (punctuation omitted); *accord Woodward*, 219 Ga. App. at 330 (1); *see also Smith v. State*, 84 Ga. App. 79, 81 (65 SE2d 709) (1951) ("If this attempted arrest was illegal, the defendant had a right to resist the same, using as much force as would be necessary to do so."); *Mullis v. State*, 196 Ga. 569, 579 (27 SE2d 91) (1943) ("Where an arrest is not lawful, the person sought to be so arrested, contrary to his right if the arrest had been lawful, has the right to resist, and in doing so has a right to resist force with force proportionate to that being used in unlawfully detaining him.") (punctuation omitted).

[8] *See Lindsey v. State*, 282 Ga. App. 644, 646-47 (639 SE2d 584) (2006) (distinguishing between a civil custody authorized by the mental-health code and a criminal arrest).

6

States Constitution[9] and Article I, Section I, Paragraph XIII of the Georgia

Constitution.[10] And specifically, when an officer takes a person into custody for an

involuntary mental-health examination, the seizure must be supported by probable

---

[9] *See Soldal v. Cook County*, 506 U.S. 56, 67 (II) (113 SCt 538, 121 LE2d 450) (1992) (recognizing that the protection afforded by the Fourth Amendment "applies in the civil context as well" as in the criminal context); *accord New Jersey v. T.L.O.*, 469 U.S. 325, 334-335 (105 SCt 733, 83 LEd2d 720) (1985); *Michigan v. Tyler*, 436 U.S. 499, 504-506 (98 SCt 1942, 56 LEd2d 486) (1978); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312-313 (98 SCt 1816, 56 LEd2d 305) (1978); *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 528 (87 SCt 1727, 18 LEd2d 930) (1967); *Braddock v. State*, 127 Ga. App. 513, 515 (194 SE2d 317) (1972); *see also O'Connor v. Ortega*, 480 U.S. 709, 715 (II) (107 SCt 1492, 94 LE2d 714) (1987) ("[B]ecause the individual's interest in privacy and personal security suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards, . . . it would be anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior." (punctuation omitted)); *McCabe v. Line-Line Ambulance Serv., Inc.*, 77 F3d 540, 544 (II) (C) (1st Cir. 1996) ("Included among the civil proceedings in which the Fourth Amendment applies are involuntary commitment proceedings for dangerous persons suffering from mental illness."); *Lenz v. Winburn*, 51 F3d 1540, 1547 (IV) (A) (2) (11th Cir. 1995) ("[T]he right against unreasonable seizures would be no less transgressed if the seizure was undertaken to collect evidence, verify compliance with a housing regulation, effect an eviction by the police, or on a whim, for no reason at all." (punctuation omitted).

[10] Ga. Const. Art. I, § 1, ¶ XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the persons or things to be seized.").

cause.[11] In this context, probable cause exists only if "there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard."[12]

In Georgia, the governing legal standard for the lawful taking of an individual into custody for the purposes of receiving an involuntary mental-health examination is delineated in OCGA § 37-3-40 *et seq.* Specifically, OCGA § 37-3-41 requires a peace officer to act pursuant to (1) a physician's certificate stating that the physician "has personally examined [the] person within the preceding 48 hours and found that . . . the person appears to be a mentally ill person requiring involuntary treatment," or (2) a court order based upon either the above-referenced physician's certificate or "upon the affidavits of at least two persons who attest that, within the preceding 48 hours, they have seen the person to be taken into custody and . . . have reason to

---

[11] *See Fitzgerald v. Santoro*, 707 F3d 725, 732 (II) (B) (7th Cir. 2013) ("[S]eizures made to effectuate an involuntary mental health commitment are analyzed under the Fourth Amendment's probable cause standard."); *Villanova v. Abrams*, 972 F2d 792, 795 (7th Cir. 1992) (Posner, J.) ("A civil commitment is a seizure, and may be made only upon probable cause . . . ."); *Gooden v. Howard County, Md.*, 954 F2d 960, 968 (4th Cir. 1992) ("We agree that the general right to be free from seizure unless probable cause exists was clearly established in the mental health seizure context.").

[12] *Fitzgerald*, 707 F3d at 732 (II) (B) (punctuation omitted); *accord Villanova*, 972 F2d at 795; *Cochrane v. Harvey*, 2005 WL 2176874, *3 (II) (N. D. Fla. 2005).

believe such person is a mentally ill person requiring involuntary treatment."[13] In the absence of either of the foregoing, OCGA § 37-3-42 (a) permits a peace officer to seize an individual for an involuntary mental-health examination "if (1) the person is committing a penal offense, *and* (2) the peace officer has probable cause for believing that the person is a mentally ill person requiring involuntary treatment."[14]

Given the applicable statutory framework, we conclude that the officers were not acting within the scope of their lawful authority when they took Boatright into custody. They did not have a physician's certificate or a court order as required by OCGA § 37-3-41, and it is undisputed that Boatright had not committed, nor was he suspected of committing, a penal offense as mandated by OCGA § 37-3-42 (a).[15]

In so holding, we are mindful that there is no dispute that the lieutenant and each of the officers involved in this case operated with the very best of intentions.

---

[13] OCGA § 37-3-41 (a), (b). The statute was amended by 2014 Ga. L. Act 546, but the substance of the provisions quoted *supra* remained unchanged.

[14] OCGA § 37-3-42 (emphasis supplied).

[15] We reject the State's position that the police department's standard operating procedures gave the officers the authority to take Boatright into custody that the statutory law otherwise did not. And the State's contention that the officers were authorized because Boatright was purportedly committing one of several inchoate offenses is not only belied by the record, but was expressly denied by both the officers involved and by the trial court during the course of the trial.

Nonetheless, among our most cherished rights, as American citizens and Georgians, is "the freedom of choice as to our movements, to be free to go where and when we wish . . . ."[16] In recognition of the sanctity of this right, we stringently construe all laws that deprive us of our physical liberty and ensure that all requirements of those laws are strictly complied with by the State.[17] And because the subject matter of this

---

[16] *Boockholdt v. Brown*, 224 Ga. 737, 739 (164 SE2d 836) (1968); *see also Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251 (11 SCt 1000, 35 LEd 734) (1891) ("No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law."); *Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F3d 520, 524 (7th Cir. 2001) (noting that the Fourth and Fourteenth Amendments to the United States Constitution "share a common concern with protecting a person's physical liberty from government restraint"); 1 William Blackstone, Commentaries on the Law of England: Of the Rights of Persons 130 (1766) ("Next to personal security, the law of England regards, asserts, and preserves the personal liberty of individuals. This personal liberty consists in the power of loco-motion, of changing situation, or removing one's person to whatsoever place one's own inclination may direct; without imprisonment or restraint, unless by due course of law.").

[17] *See Boockholdt*, 224 Ga. at 739 (noting that laws depriving Georgians of their physical liberty "should be strictly construed and all requirements of the law strictly complied with"); *see also Elam v. Rawson*, 21 Ga. 139, 143 (1857) ("The common law leans towards that construction of all statutes, which is in favor of personal liberty, not that which is against personal liberty."); *accord Hope & Associates, Inc. v. Marvin M. Black Co.*, 205 Ga. App. 561, 562 (422 SE2d 918) (1992).

10

case involves "the extremely sensitive area of deprivation of [physical] liberty,"[18] and further because "[t]he procedural safeguards contained in [the governing statutes] are obviously there for the purpose of ensuring that individual rights are not eroded in the name of medical expediency,"[19] we require strict compliance with the procedures mandated by these statutory provisions.[20]

Thus, despite the purest motives of the law-enforcement officers, Boatright was not lawfully detained. Consequently, he was authorized to resist those attempting to take him into custody with all force necessary for that purpose, rendering insufficient the evidence against him to sustain his convictions on obstruction of a law-enforcement officer.[21]

---

[18] *Williams v. Smith*, 179 Ga. App. 712, 715 (2) (348 SE2d 50) (1986) (punctuation omitted); *see also Kendrick v. Metro. Psychiatric Ctr., Inc.*, 158 Ga. App. 839, 841 (282 SE2d 361) (1981) (physical precedent only).

[19] *Williams*, 179 Ga. App. at 715 (2) (punctuation omitted); *see also Kendrick*, 158 Ga. App. at 841.

[20] *See Williams*, 179 Ga. App. at 715 (2); *see also Health v. Peachtree Parkwood Hospital, Inc.*, 200 Ga. App. 118, 119 (2) (407 SE2d 406) (1991) ("It is apparent that we cannot permit even well intentioned departures from the statutory scheme for involuntary hospitalization." (punctuation omitted)).

[21] *See* OCGA § 16-10-24 (b); *Ewumi v. State*, 315 Ga. App. 656, 664 (2) (a) (727 SE2d 257) (2012) (holding that officer lacked probable cause to arrest appellant, rendering the evidence supporting his conviction for obstruction insufficient); *Land*

*Judgment reversed. Doyle, P. J., and Miller, J., concur in judgment only.*

---

*v. State*, 259 Ga. App. 860, 863 (2) (578 SE2d 551) (2003) (reversing appellant's conviction for obstruction after concluding there was no admissible evidence showing his arrest was lawful).