**THIRD DIVISION**
**PHIPPS, C. J.,**
**BARNES, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 11, 2015**

# In the Court of Appeals of Georgia

A14A1626. CHESTNUT v. THE STATE.

BRANCH, Judge.

Rufus Chestnut was tried by a Coffee County jury and convicted of violating OCGA § 42-1-12, which required Chestnut, as a registered sex offender, to provide the Coffee County Sheriff's office with 72 hours advance notice of any change in his residential address, with such notice to include the new address to which Chestnut was moving. Chestnut now appeals, arguing that under the Georgia Supreme Court's decision in *Santos v. State*, 284 Ga. 514 (668 SE2d 676) (2008), the evidence is insufficient to sustain his conviction. For reasons explained more fully below, we agree with Chestnut and therefore reverse his conviction.

Although this case has a protracted procedural history, the relevant facts are undisputed and show that in November 2006, Chestnut was convicted of incest as a

result of his relationship with an adult woman (S. C.), who was the legal daughter of Chestnut's brother Larry Chestnut ("Larry").[1] See *Chestnut v. State*, 287 Ga. App. 693 (652 SE2d 596) (2007). Upon being convicted of incest, Chestnut received a sentence of 10 years, with four years to be served in incarceration and the balance to be served on probation. As a result of Chestnut's incest conviction, OCGA § 42-1-12 required him to register with the State as a sex offender prior to his release from prison and to register as a sex offender with his local law enforcement agency within 72 hours following his release. See OCGA § 42-1-12 (10) (a) (xii) (defining incest as a "dangerous sexual offense" and subjecting any person convicted of that crime to the registration requirements found in OCGA § 42-1-12); OCGA § 42-1-12 (f) (1), (f) (2).

Chestnut was released from prison on April 11, 2009. Two days later, on April 13, he went to the Coffee County Sheriff's Office to register as a sex offender. Chestnut's probation officer, Mike Taylor, refused to allow Chestnut to register at the first address he offered because that residence was within 1,000 feet of a day care

---

[1] Prior to Chestnut's 2006 bench trial on the incest charge, the parties stipulated that S. C. was born during Larry's marriage to her mother, approximately one year after Larry began serving a 13-year period of incarceration; that Larry was not S. C.'s biological father; and that Larry had never taken any legal action either to adopt S. C. or to repudiate her birth.

center and therefore did not meet the requirements of OCGA § 42-1-15 (a) (2006).[2] Recognizing that Chestnut "was homeless," Taylor gave him an additional three days to find a different residence. On April 14, Chestnut returned to the Sheriff's Office and completed his registration, listing his residential address as "1014 N. Latitia St., Apt. B, Douglas, Ga." Taylor approved this address after measuring to make sure that it was situated the statutorily-mandated distance from "day cares, churches, schools, etc."

As part of his registration, Chestnut was required to sign a "Notification Form," on which he acknowledged the restrictions placed upon him by OCGA § 42-1-12, including the requirement that he provide the sheriff's office with 72 hours prior notice before moving from the approved residential address. The notification form further provided that Chestnut understood that a residence address was a "street or route address" and that "[p]ost office box and homeless do not constitute an address."

---

[2] At the time of Chestnut's release from prison, this statute provided that "[n]o individual required to register pursuant to Code Section 42-1-12 shall reside . . . within 1,000 feet of any child care facility, church, school, or area where minors congregate." OCGA § 42-1-15 (a) (2006). The registration statute currently applicable to Chestnut provides that "[a]ny individual who committed an act between June 4, 2003, and June 30, 2006, for which such individual is required to register shall not reside within 1,000 feet of any child care facility, school, or area where minors congregate." OCGA § 42-1-17 (b) (2013).

On June 17, 2009, Taylor went to check on Chestnut at his registered address. Chestnut was not present at the apartment, but his brother, Howard Chestnut, was. Based on a conversation that Taylor had with Howard, Taylor contacted Chestnut. When Chestnut appeared at Taylor's office the following day, he told the probation officer that the apartment belonged to his brother and that Chestnut had been forced to leave when the brother's minor daughter moved into the residence, as Chestnut knew that the terms of his probation forbade him from living with minors. Chestnut explained to Taylor that his niece was going to return to live with her mother and that when the niece moved out, Chestnut would move back in with Howard. On July 21, 2009, Taylor made a second visit to Howard's apartment but found no one at home. The following day, Taylor returned to the apartment with Detective Jamie Hersey of the Coffee County Sheriff's Office and found Howard at the residence. With Howard's permission, Hersey and Taylor searched the apartment and found no evidence that Chestnut was living there. Hersey then obtained a warrant for Chestnut's arrest, charging Chestnut with violating OCGA § 42-1-12 by failing to inform the Sheriff's Office 72 hours before changing his residential address. Chestnut was arrested on July 27, 2009, and was indicted on October 1, 2009. An attorney with the Waycross Circuit Defender's office was apparently appointed to represent

4

Chestnut[3] and on November 18, 2009, that lawyer filed a motion to quash the indictment.[4] The trial court denied that motion on March 22, 2010.

On July 18, 2010, Chestnut wrote to the clerk of the Coffee County Superior Court, stating that he had not heard from his attorney since April 2010 and asking when his case would come to trial, noting that he had been in jail for a year on the pending charges. The clerk responded to Chestnut on July 23, telling Chestnut that he did not yet have a trial date. Trial was thereafter set for October 18, 2010, but the case did not go forward at that time.[5] On October 27, 2010, Chestnut's attorney filed a second motion to quash the indictment that was almost identical to the first motion to quash. The trial court denied the second motion to quash on December 13, 2010. After that time, the case remained dormant for almost two years while Chestnut remained in jail. Although the Waycross Circuit Defender's Office remained counsel

---

[3] There is nothing in the record reflecting that appointment, but the attorney did file pleadings on Chestnut's behalf.

[4] This motion was based on two arguments. First, the motion contended that because Chestnut's incest conviction resulted from a consensual relationship with an adult woman to whom he was not biologically related, requiring him to register as a sex offender was unconstitutional. The motion also asserted that OCGA § 42-1-12 (f) was unconstitutionally vague because of its failure to define "residence."

[5] Nothing in the record reflects why the trial did not go forward as scheduled.

5

of record, it appears that during this two-year period, no lawyer in that office was actually assigned to the case. The record reflects that during this time, Chestnut had no contact with an attorney and believed himself to be without legal representation. Accordingly, Chestnut, who has an eighth-grade education, filed four pro se motions, including two motions seeking the appointment of an attorney to represent him.[6]

On November 19, 2012, while there was apparently no specific attorney assigned to represent Chestnut, the trial court entered an order setting trial for December 10, 2012.[7] The trial did not go forward on that date, and on December 13, 2012, three days after the scheduled trial date, the circuit public defender's office was formally relieved of its representation of Chestnut and a new attorney was appointed.

---

[6] The other motions filed by Chestnut included a motion seeking a transcript and case record and a motion seeking reconsideration of the trial court's order denying the second motion to quash the indictment against him. Chestnut's efforts to get someone in the judicial system to pay attention to his case are further evidenced by a September 10, 2012 letter Chestnut wrote to the superior court clerk, in which Chestnut asked for the clerk's assistance in finding the address of the "Court of Appeal[s] in Atlanta . . . and Washington, D. C."

[7] This order was mailed to: "Attorney: Public Defender," at an address in Douglas. One week after this order was mailed, the district attorney filed notice of his intent to introduce Chestnut's "prior record." At the top of this notice, which contains no address at which it was to be served, the following appears: "TO: KEITH HARKLEROAD." The record is devoid of any indication as to who Keith Harkleroad might be or why notice regarding evidence to be used at Chestnut's trial was being directed to him.

6

This attorney represented Chestnut at his trial, which occurred on February 20, 2013, and he also represents Chestnut on this appeal.[8]

At trial, Hersey testified that following Chestnut's arrest on July 27, 2009, Chestnut was read his Miranda rights and agreed to speak with police. Chestnut told Hersey that he could not reside in his brother's apartment after Howard's teenage daughter moved in to the residence.[9] Chestnut told police that since leaving his brother's home, he had been staying "on the Old Axson Highway." When questioned further, however, Chestnut could not provide the officer with a street address or the name of any person with whom he had been residing.

Chestnut testified on his own behalf and stated that upon his release from prison he had stayed with his brother at the N. Latitia address. Within a day or two after being released, however, Chestnut was hospitalized for several nights. After getting out of the hospital, Chestnut learned that his teenage niece had moved into Howard's apartment, and Chestnut knew that under the terms of his probation he

---

[8] This attorney did not file a formal notice of appearance until April 4, 2013, approximately six weeks after Chestnut was convicted and approximately two weeks after counsel had filed a motion for a new trial on Chestnut's behalf.

[9] During his testimony, Hersey confirmed that under the terms of Chestnut's probation, Chestnut could not live with his teenage niece.

could not reside with a minor. Thus, although he frequently went to his brother's apartment to eat, Chestnut could not actually reside there.[10]

Chestnut also testified that although he had several siblings in the area, the sheriff's office would not allow him to live with any of his brothers or sisters because their homes were too close to schools, churches, parks, and playgrounds. Given the lack of friends or relatives with whom he could reside, Chestnut became homeless after moving out of his brother's apartment. Because there were no homeless shelters in the area, Chestnut began sleeping in an abandoned trailer situated in some woods off of Axson Road. Chestnut would alternate between sleeping in the trailer (which was boarded up and was without power or water) and different storage units belonging to a nearby storage facility. On some occasions, Chestnut would sleep behind a local furniture store. At no time did Chestnut ever leave Coffee County.

During direct examination, Chestnut's attorney questioned Chestnut about his failure to inform the sheriff's office of his homeless status and his failure to tell police where he was sleeping. In doing so, the lawyer erroneously represented to both the

---

[10] Chestnut explained that police did not find any signs of his presence at the apartment because he had no belongings to leave there, saying: "I'm fresh out of prison. I ain't got no clothes, no nothing. I'm quite sure they can't find nothing in that house that belongs to me because I didn't have nothing. Everything I had was on me."

jury and Chestnut the contents of the registration form Chestnut had signed. The lawyer asked Chestnut: "Well, you realize one of the things that [registration] form says is that, if you're homeless, you're supposed to go report that as well?" Chestnut, who did not have the form in front of him, replied that "when I signed them papers, it didn't say that. It's not on there when I first signed them papers. Like he say, things have changed since I been out." In fact, there is no evidence in the record showing that Chestnut ever signed any form that told him he had to register his homeless status.[11] Instead, the form signed by Chestnut reflected the then-current statutory language, which explicitly provided that for purposes of registration, an address was a route or street number and that "homeless does not constitute an address." See OCGA § 42-1-12 (a) (1) (2009). In other words, the registration form informed Chestnut that a homeless person who was without a route or street address could not satisfy the statute's registration requirements.

The jury found Chestnut guilty and the trial court sentenced him on March 28, 2013 to 30 years, with five years to be served in incarceration and the balance on

---

[11] Nor does the State contend that Chestnut violated the law by failing to inform the police of his homeless status.

probation.[12] Chestnut's attorney filed a motion for a new trial on March 19, 2013 and the trial transcript was filed six months later, on August 12. A hearing on Chestnut's new trial motion was scheduled for February 28, 2014. Three days after this scheduled hearing date, Chestnut's attorney and the prosecutor filed a joint stipulation waiving both an evidentiary hearing and oral argument as to the new trial motion. The trial court then entered an order denying the new trial motion on March 14, 2014. This appeal followed, with Chestnut's sole claim of error being that the evidence is insufficient to sustain his conviction.

As noted above, the statute under which Chestnut was prosecuted, OCGA § 42-1-12, requires individuals convicted of sex crimes to register with the sheriff of the county in which they reside. OCGA § 42-1-12 (f) (2). As part of that registration, the convicted sex offender must provide the sheriff with certain information, including a "residence address." OCGA § 42-1-12 (a) (16) (B) (2009). And the version of the statute under which Chestnut was prosecuted provided that:

Any sexual offender required to register under this Code section shall:
. . . Update the required registration information with the sheriff of the

---

[12] Thus, with credit for time served during the three years and 10 months he had been incarcerated awaiting trial, Chestnut was scheduled to complete his time in incarceration in July 2014, while this appeal was pending.

county in which the sexual offender resides within 72 hours of any change to the required registration information, other than residence address; if the information is the sexual offender's new residence address, the sexual offender shall give the information to the sheriff of the county with whom the sexual offender last registered within 72 hours prior to any change of residence address and to the sheriff of the county to which the sexual offender is moving within 72 hours after establishing the new residence[.]

OCGA § 42-1-12 (f) (5) (2009). The 2009 version of the statute defined "address" as "the street or route address of the sexual offender's residence" and specifically states that for purposes of the Code section, "the term does not mean a post office box, and homeless does not constitute an address." OCGA § 42-1-12 (a) (1) (2009). This version of the statute provided no guidelines for what a homeless person who was without a route or street address should do to comply with the registration requirement as to "residence address."

In 2008, the Georgia Supreme Court considered whether a homeless sex offender who was without a route or street address could be prosecuted for violating

11

the former version of OCGA § 42-1-12 (f) (5).[13] *Santos*, 284 Ga. 514. Santos was a convicted sex offender who had become homeless upon his release from prison but who had been able to provide police with the address of a local homeless shelter that had agreed to house him. Id. at 515 (1). Eventually, however, Santos was asked to leave the shelter and when he did so, he was not only homeless, but also without any kind of route or street address. Id. After Santos had been without an address for approximately three months, he was arrested and charged with violating OCGA § 42-1-12. Id. Santos moved to quash the indictment, arguing that the statute was unconstitutionally vague as applied to homeless sex offenders who were without a residence address. Id. at 514. The trial court denied the motion to quash but our Supreme Court reversed that decision, finding that because the statute failed to provide individuals such as Santos with fair notice of how they could comply with the statute's residence address registration requirement, that "requirement is too vague

---

[13] Although Chestnut was indicted in 2009, almost one year after *Santos* was decided, the former version of OCGA § 42-1-12 (f) (5) analyzed by the Georgia Supreme Court in *Santos* was still in effect.

12

to be enforced against [such persons] and is, therefore, unconstitutional under the due process clauses of the Georgia and United States Constitutions." Id. at 517 (1).[14]

On appeal, Chestnut relies on *Santos* to support his claim that the evidence was insufficient to convict him of violating the former version of OCGA § 42-1-12 (f) (5). Specifically, Chestnut contends that under *Santos*, the State was required to prove that Chestnut had a new street or route address he could have provided to authorities prior to or at any time after he ceased living at his brother's apartment. Given the absence of any evidence showing that he had such an address, Chestnut argues that the State failed to meet its burden of proof. We agree.

---

[14] The legislature amended OCGA § 42-1-12 in 2010 and struck the language which excluded "homeless" from the definition of "address." Additionally, the legislature amended subsection (f) (5) in several ways, including the addition of the following language: "If the sexual offender is homeless and the information is the sexual offender's new sleeping location, within 72 hours of changing sleeping locations, the sexual offender shall give the information regarding the sexual offender's new sleeping location to the sheriff of the county in which the sexual offender last registered, and if the county has changed, to the sheriff of the county to which the sexual offender has moved." The legislature also added a new subsection to OCGA § 42-1-12 (f) which provides, in relevant part: "In the case of a sexual offender whose place of residence is the status of homelessness, [he or she shall] register in person with the sheriff of the county in which the sexual offender sleeps within 72 hours after the sexual offender's release from prison or placement on parole, supervised release, [or] probation . . . and provide the location where he or she sleeps." OCGA § 42-1-12 (f) (2.1) (2013).

13

The undisputed evidence, including both Chestnut's testimony and the testimony concerning statements Chestnut made to police immediately following his July 2009 arrest, shows that after he could no longer live with his brother, Chestnut was homeless. And although the record shows that Chestnut slept at various, non-residential locations, the State presented no evidence to prove that any of these locations had a route or street address that Chestnut could have provided to authorities. In its appellate brief, the State attempts to overcome this fatal flaw in its case by asserting that "[n]othing in the record indicates that any of the[ ] locations" at which Chestnut slept after leaving the apartment on N. Latitia (including the hospital, the abandoned trailer and the various storage units) "was without a street or route address." The obvious problem with this argument is that it ignores the basic constitutional principle that in a criminal prosecution, it is the State who bears the burden of proof. Thus, to convict Chestnut, the State was required to prove that he had a route or street address which he failed to register; Chestnut was not required to prove the lack of such an address. See *Volz v. State*, 306 Ga. App. 763, 764-766 (703 SE2d 354) (2010) (holding that in light of *Santos*, a convicted sex offender claiming homelessness could be convicted of violating OCGA § 42-1-12 (f) (5) if the State could prove that the homeless person had a residence address which he or she could

14

have provided to the local sheriff). The State, however, came forward with no evidence to satisfy its burden of proof.

In a further effort to circumvent the problems with its case, the State asserts that because Chestnut's claim as to the sufficiency of the evidence is predicated on *Santos*, Chestnut is actually challenging OCGA § 42-1-12 on constitutional grounds. The State then argues that Chestnut has waived this alleged constitutional challenge by failing to raise it prior to trial. See *Perez-Castillo v. State*, 275 Ga. 124 (562 SE2d 184) (2002) ("[a] constitutional attack on a state statute must be made at the first opportunity, and it is too late to raise such a question after a guilty verdict has been returned by the jury") (punctuation and footnote omitted). Again, however, this argument ignores the fact that by the time of Chestnut's arrest and indictment, the Georgia Supreme Court had already decided that the former OCGA § 42-1-12 (f) (5) was unconstitutional as applied to those homeless sex offenders who, like Chestnut, are without a street or route address. See *Santos*, 284 Ga. 514. Thus, Chestnut is not challenging the constitutionality of the former OCGA § 42-1-12 (f) (5); instead, as explained previously, Chestnut is claiming that *Santos* required the State to prove that after he became homeless, Chestnut nevertheless had a street or route address which he failed to register.

15

Moreover, to the extent that the State is contending that Chestnut's arguments as to *Santos* should have been raised at some point during the almost five years this case was pending in the trial court, we agree. As our opinion makes clear, *Santos* is the dispositive legal precedent with respect to this prosecution. Yet despite the fact that *Santos* controls any prosecution of a homeless sex offender under the former OCGA § 41-1-12 (f) (5), and even though *Santos* was decided nine months prior to Chestnut's arrest and 52 months prior to his trial and conviction, the record shows that neither the State nor defense counsel ever cited that case prior to this appeal. Most notably, no mention of *Santos* was made in connection with either of the two motions to quash the indictment, and there was not a proposed jury charge based on *Santos*.[15] In short, it appears that no fewer than four prosecutors (two district attorneys and two assistant district attorneys) and two defense lawyers somehow remained unaware of *Santos* until approximately six years after that case was decided. The failings of both the prosecution and defense counsel, however, cannot and did

---

[15] The State did submit a jury charge based on the current version of OCGA § 42-1-12, which sets forth the steps a homeless person should take to comply with the registration requirement as to residence address. At the charge conference, however, the State withdrew that requested charge, noting that the version of the statute under which Chestnut was being prosecuted contained no provision regarding "homelessness."

16

not relieve the State of its burden of proof under *Santos*; nor do these failings preclude Chestnut from relying on *Santos* to challenge his conviction.

Here, the record shows that the State has never contested the evidence showing Chestnut's homeless status. Nor has the State ever alleged — either in the indictment or at trial — that, despite his homelessness, Chestnut had a street or route address which he failed to register with the sheriff's office. Most importantly, the State failed to come forward at trial with any evidence showing that Chestnut had such an address. Given the State's failure to meet its burden of proof, Chestnut's conviction is reversed.

*Judgment reversed. Phipps, C. J., and Barnes, P. J., concur*.