**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 11, 2020**

# In the Court of Appeals of Georgia

A20A0612. YOUNG v. THE STATE.

DILLARD, Presiding Judge.

Darius Young appeals from the trial court's denial of his motion for new trial following his conviction for failing to register as a sex offender. Young argues on appeal that (1) the evidence is insufficient to sustain his conviction, and (2) even if the evidence is sufficient, the court erroneously applied the law to the facts, and the case should be remanded for a new trial. Because we agree that the State failed to present sufficient evidence to sustain the conviction, we reverse.[1]

---

[1] Oral argument was held in this case on February 6, 2020, and is archived on the Court's website. *See* Court of Appeals of Georgia, Oral Argument, Case No. A20A0612 (Feb. 6, 2020), available at https://www.gaappeals.us/oav/A20A0612.php.

Viewed in the light most favorable to the verdict,[2] the record shows that Young previously pleaded guilty to child molestation and was therefore required to register as a sex offender. As a result, Young was part of the caseload for a Newton County sheriff's deputy assigned to monitor and supervise local sex offenders. As part of the monitoring process, the deputy presented Young with certain forms and had him sign these documents. One of the forms advised Young that "if you are homeless, you must report in person to the sheriff's office of the county where you sleep within 72 hours of changing you sleeping location." And as part of her duties, the deputy performed residence checks for Young and other local offenders at the addresses they provided.

When Young completed his registration packet in August 2016, he indicated that he was homeless and agreed to report in person to the sheriff's office where he was sleeping "within 72 hours of changing your sleeping location." He did so because when offenders change their address, employment, or other vital details, they must fill out an "offender information update form." And on July 11, 2017, Young

---

[2] *See, e.g.*, *Hickman v. State*, 311 Ga. App. 544, 545 (716 SE2d 597) (2011).

completed such a form to reflect a new sleeping location, that being a blue Chevrolet Cobalt[3] parked in a driveway on Flat Shoals Road.[4]

During the day on August 1, 2017, the assigned deputy performed a residence check for Young with the updated information on his form. And when she arrived at the listed location, Young was not there. Instead, the blue Chevrolet Cobalt was parked at a different house located in Porterdale, Georgia.[5] Apparently, between the period of listing the relevant sleeping address and the deputy performing her check, Young failed to update his sleeping-address information to reflect a new location.

On August 3, 2017, Young was arrested, and then subsequently indicted for failure to register as a sex offender. Following a bench trial, he was convicted of the offense. Young then moved for a new trial, which the trial court denied. This appeal follows.

---

[3] Young was not the owner of this vehicle.

[4] Young previously registered his sleeping location as a local hotel, but he later changed it to the relevant vehicle location, and that is the location at issue on appeal.

[5] The deputy did not testify as to what time of day it was when she visited the Flat Shoals Road and Porterdale locations, but from the photographs contained in the record, it appears to be daytime.

On appeal from a criminal conviction following a bench trial, the defendant no longer "enjoys a presumption of innocence, and we view the evidence in a light favorable to the trial court's finding of guilt, giving due regard to the trial court's opportunity to judge witness credibility."[6] We do not weigh the evidence or determine the credibility of witnesses, but determine only if "there is enough evidence from which a rational trier of fact could have found the accused guilty beyond a reasonable doubt."[7] With these guiding principles in mind, we turn to Young's enumerations of error.

1. Young argues that the evidence was insufficient to sustain his conviction. We agree.

OCGA § 41-1-12 (f) (5) requires sexual offenders who must register to

> *[u]pdate the required registration information with the sheriff of the county in which the sexual offender resides within 72 hours of any change to the required registration information, other than where he or she resides or sleeps if such person is homeless.* If the information is the sexual offender's new address, the sexual offender shall give the information regarding the sexual offender's new address to the sheriff of the county in which the sexual offender last registered within 72

---

[6] *Hickman*, 311 Ga. App. at 545 (punctuation omitted).

[7] *Id*.

hours prior to any change of address and to the sheriff of the county to which the sexual offender is moving within 72 hours prior to establishing such new address. *If the sexual offender is homeless and the information is the sexual offender's new sleeping location, within 72 hours of changing sleeping locations, the sexual offender shall give the information regarding the sexual offender's new sleeping location to the sheriff of the county in which the sexual offender last registered, and if the county has changed, to the sheriff of the county to which the sexual offender has moved*[.][8]

The crux of the disagreement between Young and the State is whether this statutory provision requires a homeless sexual offender to notify the sheriff's office within 72 hours of even a *temporary* change of sleeping location, or whether the 72-hour requirement is instead applicable only to a new—*i.e.*, more permanent—sleeping location. But setting aside which interpretation is correct, the State failed to present sufficient evidence to support a conviction even under *its* interpretation of the statute.[9]

---

[8] (Emphasis supplied).

[9] Although we need not reach the question of whether OCGA § 41-1-12 (f) (5) requires a homeless sexual offender to report a temporary change of sleeping location, this case demonstrates the inherent problems faced by the State in enforcing the requirements of the statute as to these transient individuals. *See supra* note 1.

5

(a) *The night of July 31, 2017.*

Young contends that even if the State's position is correct—*i.e.*, that he was required to register even a temporary sleeping location within 72 hours—the evidence was insufficient to support his conviction. More specifically, Young maintains that even if we were inclined to adopt the State's interpretation of OCGA § 41-1-12 (f) (5), his conviction must still be reversed because the State did not present sufficient evidence that he failed to register a change in sleeping location within 72 hours of changing that location on the night of July 31, 2017, when he was arrested *before* a 72-hour period elapsed on August 3, 2017. The appellate record supports Young's argument.

In addition to the testimony of the deputy who performed the residence check on August 1, 2017, and found that neither Young nor the vehicle were at that address, the State also tendered into evidence Young's testimony from a September 2017 probation-revocation hearing,[10] during which Young testified that he did not always sleep at the address on file with the sheriff's office.[11] Specifically, Young testified

---

[10] At the relevant time, Young was already on probation for another incident of failing to register as a sex offender.

[11] Although Young objected to the trial court considering any of the other testimony presented at the probation-revocation hearing, he did *not* object to the

that he told the deputy he was "never gone from that address more than 72 hours[.]"

And although he had permission to sleep in the driveway of the Flat Shoals Road

residence, the homeowner "really didn't want [him] in his driveway," so Young

would "be there for a night or two and then might be gone for a night and then come

court's consideration of his own testimony from that hearing. And on appeal, Young has not challenged the admission of this evidence, *i.e.*, *his* prior testimony. Nevertheless, we previously determined that an "appellant waived his privilege against self-incrimination by testifying voluntarily on his behalf at the probation revocation hearing to the extent of that testimony," *Bobbit v. State*, 215 Ga. App. 131, 132 (449 SE2d 674) (1994), and, thus, the use of Young's testimony at trial did not violate his privilege against self-incrimination. *Id*.; *see also Edison v. State*, 256 Ga. 67, 68 (3) (344 SE2d 231) (1986) ("A defendant who testifies on his behalf waives his privilege against self-incrimination to the extent of that testimony."). *Cf. United States v. Bazzano*, 712 F2d 826, 836 (III) (A) (1983) (3rd Cir. 1983) (Garth, J., writing separately from *per curiam* plurality opinion) ("[Appellant] argues that when a probation revocation hearing is held prior to the disposition of related criminal charges, the probationer is faced with a dilemma. If he chooses to testify in the probation revocation hearing, he may compromise his constitutional privilege against self-incrimination in connection with the related criminal proceeding. If he decides not to testify in the revocation hearing, his probation may be revoked even though he may later be acquitted of the related criminal charges. Thus, [appellant] argues that the proper procedure is for the probation revocation proceedings to be postponed until after the related criminal charges are resolved, and if postponement is not desired by the Government and the revocation hearing is held first, for the probationer to be given use immunity so that he can testify without penalty in the revocation proceeding."), *cert. denied Mollica v. United States*, 465 U.S. 1078 (104 SCt 1439, 79 LE2d 760) (1984). *But see Simmons v. United States*, 390 U.S. 377, 394 (III) (88 SCt 967, 19 LE2d 1247) (1968) ("[W]hen a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection.").

7

back." Young further testified that the homeowner would occasionally come out to tell him that he could not sleep in the driveway on certain nights or that he needed to leave at an early hour the following day. So, when the deputy came to check on him on August 1, 2017, Young suspected that he was "probably in Oxford" at a "new address that [he] was going to give [to the officer]."

Young was indicted for, "on or about the 1st day of August, 2017, . . . failing to notify the Newton County Sheriff's Office of a change in sleeping location, after registering as homeless, within 72 hours of changing his sleeping location[.]" Even so, the sheriff's deputy did not testify as to when Young was arrested for this offense. But in Young's probation-revocation hearing testimony, he explained that on August 1, 2017, a friend advised that the sheriff's office was looking for him. As a result, Young went to the sheriff's office on August 2, 2017, with the intent of updating his address to a new sleeping location that he had just found—the same place he slept on the night of July 31, 2017; but the office was closed. Young claims he then returned the following day (*i.e.*, on August 3) during business hours and was immediately

arrested upon arrival.[12] And the State concedes that Young was indeed arrested on August 3, 2017.

So, under the State's interpretation of OCGA § 41-1-12 (f) (5), when Young slept at an address other than the one he registered on the night of July 31, 2017, he had 72 hours to register that temporary sleeping location with the sheriff's office, giving him until the night of August 3, 2017. But the evidence at trial did not show that Young was given 72 hours to comply with OCGA § 41-1-12 (f) (5) (even assuming the State's interpretation of the statute is correct), when he was arrested upon his arrival at the sheriff's office during business hours on August 3, 2017. Thus, because there is no evidence that 72 hours elapsed prior to Young's arrest, the State failed to present sufficient evidence to sustain his conviction.[13]

---

[12] Young's arrest warrant was executed on August 3, 2017, reflecting the allegation that he failed to register as a sex offender by moving on July 31, 2017 and failing to notify the sheriff's office, and that the crime was committed on August 2, 2017, between the hours of 8:00 a.m. and 9:00 a.m. Additionally, Young's first-appearance hearing was conducted at 8:20 a.m. on August 4, 2017.

[13] *See Jones v. State*, 340 Ga. App. 398, 400 (797 SE2d 653) (2017) (reversing conviction when State failed to present sufficient evidence that defendant failed to register as a sex offender); *Chestnut v. State*, 331 Ga. App. 69, 77 (769 SE2d 779) (2015) (same). *Cf. Jackson v. State*, 335 Ga. App. 597, 599-600 (2) (782 SE2d 499) (2016) (holding that evidence was sufficient to establish that defendant did not comply with 72-hour rule for changing his address when, after June 2011, authorities were unable to make contact with defendant at his registered address and he did not

(b) *Nights between July 11, 2017, and July 31, 2017.*

To the extent the State suggests Young was actually indicted for *other* times that he slept at temporary locations and failed to register them with the sheriff's office within 72 hours, Young asserts that his testimony at the probation-revocation hearing—on which the State relies to make this argument—amounted to a confession, and confessions must be corroborated by other evidence to justify a conviction.[14] Again, we agree.

Unlike confessions, admissions are not so comprehensive as to "include every essential element of the offense," and instead, are "the avowal of a fact or of circumstances from which guilt may be inferred, but only tending to prove the offense charged and not amounting to a confession of guilt."[15] Confessions, on the other

---

update his address prior to his arrest in another city in January 2012), *reversed on other grounds by State v. Jackson*, 301 Ga. 137 (800 SE2d 356) (2017).

[14] *See* OCGA § 24-8-823 ("All admissions shall be scanned with care, and confessions of guilt shall be received with great caution. A confession alone, uncorroborated by any other evidence, shall not justify a conviction.").

[15] *Griffin v. State*, 302 Ga. App. 807, 808 (692 SE2d 7) (2010) (punctuation omitted); *accord Williams v. State*, 246 Ga. App. 347, 350 (1) (540 SE2d 305) (2000).

hand, "include all elements of the offense charged."[16] Put more succinctly, "[i]n the former only one or more facts entering into the criminal act are admitted, while in the latter the entire criminal act is confessed."[17] And as our Supreme Court has explained, the reason confessions must be corroborated is to "ameliorate the danger of a coerced confession or the confession of a mentally unbalanced person providing the entire proof used to convict a defendant."[18]Admissions, on the other hand, do not "admit every element of the offense, leaving on the State the burden of proving some

---

[16] *Herrington v. State*, 243 Ga. App. 265, 266 (3) (533 SE2d 133) (2000); *see Walsh v. State*, 269 Ga. 427, 429 (1) (499 SE2d 332) (1998) ("An admission differs from a confession in that a confession acknowledges all of the essential elements of the crime."); *Johnson v. State*, 204 Ga. 528, 530 (50 SE2d 334) (1948) ("Incriminating statements, to be the equivalent of a confession of guilt, must be so comprehensive as to include every act necessary to be proven by the prosecution in order to establish the defendant's guilt.").

[17] *Herrington*, 243 Ga. App. at 266 (3) (punctuation omitted); *see Johnson*, 204 Ga. at 530 ("There is a difference between an incriminating statement and a confession of guilt. In the former only one or more facts entering into the criminal act is admitted, while in the latter the entire criminal act is confessed."); *see also Williams*, 246 Ga. App. at 350 (1) ("[The defendant's] statement was not a confession, but rather, an admission, as it was not so comprehensive as to include every essential element of the offense.").

[18] *Lowe v. State*, 267 Ga. 180, 181-82 (4) (476 SE2d 583) (1996) (citations & punctuation omitted); *accord Herrington*, 243 Ga. App. at 266 (3).

11

elements of the offense by evidence other than the admissions."[19] The evidence necessary to meet this burden need not corroborate the admissions, but must "provide proof of those elements of the offense not admitted."[20] So, to sufficiently support a confession, "other evidence need only corroborate it in any particular."[21] Additionally, a confession, freely and voluntarily made, is "evidence of the highest character, and any corroboration thereof will be sufficient to sustain a conviction."[22]

Here, Young was indicted for "on or about the 1st day of August, 2017, . . . failing to notify the Newton County Sheriff's Office of a change in sleeping location, after registering as homeless, within 72 hours of changing his sleeping location[.]" And by testifying that on occasions *prior to* July 31, 2017, he temporarily slept at other locations without later registering those sleeping addresses because he was "never gone . . . more than 72 hours," he confessed to the State's interpretation of the statute—*i.e.*, being a registered sex offender who failed to register temporary sleeping

---

[19] *Lowe*, 267 Ga. at 182 (4); *accord Herrington*, 243 Ga. App. at 266 (3).

[20] *Lowe*, 267 Ga. at 182 (4); *accord Herrington*, 243 Ga. App. at 266 (3).

[21] *Norman v. State*, 298 Ga. 344, 346 (2) (a) (781 SE2d 784) (2016); *accord Kirkland v. State*, 271 Ga. 217, 218 (1) (518 SE2d 687) (1999).

[22] *Carswell v. State*, 268 Ga. 531, 532 (1) (491 SE2d 343) (1997).

locations within 72 hours.[23] But the State did not present *any* evidence to corroborate anything other than an alleged failure to register a temporary sleeping location within 72 hours of the night of July 31, 2017, nor does it argue that it corroborated anything other than testimony as to this occasion.[24] Accordingly, in the absence of such corroboration, Young's testimony from the probation-revocation hearing cannot form

---

[23] *See generally Jackson v. State*, 301 Ga. 137, 142-43 (2) (800 SE2d 356) (2017) ("The case of *Relaford v. State*[, 306 Ga. App. 549, 550, (702 SE2d 776) (2010),] provides a good example of a legally adequate indictment in a case in which the appellant, a registered sexual offender, was accused and convicted of failing to report an address change when he relocated his residence within the same county in which he initially registered, an offense also covered by OCGA § 42-1-12 (f) (5). One of the counts of the indictment against the accused in *Relaford* read as follows: ['O]n or about April 4, 2007, the exact date being unknown to the grand jurors, after having previously been convicted of Rape on November 14, 2000, which conviction required [him] to register as a sexual offender in the county in which he resided, [the accused] did change his Chatham County residence from [stated address], Savannah, Chatham County, Georgia and did fail to notify the Sheriff of Chatham County of such change within 72 hours following such change in violation of Code Section 42-1-12.'" (punctuation & footnote omitted)).

[24] *See Brown v. State*, 225 Ga. App. 750, 751 (484 SE2d 795) (1997) (holding that evidence was insufficient to sustain conviction for impersonating another person when defendant told officers that the name he initially provided was not his own and belonged to another person when the State did not corroborate this confession with evidence that the named belonged to an actual person and was not merely a false name); *Shaver v. State*, 199 Ga. App. 428, 430 (1) (405 SE2d 281) (1991) (holding that there was insufficient evidence to sustain conviction when confession was uncorroborated).

the sole basis of a conviction for alleged statutory violations other than a 72-hour period *after* the night of July 31, 2017.[25]

2. Because we agree with Young that the State failed to present sufficient evidence to sustain his conviction, we need not reach Young's second enumeration of error, which is that the trial court erroneously applied the law to the facts of this case.

For all these reasons, we reverse Young's conviction.

*Judgment reversed. Rickman and Brown, JJ., concur.*

---

[25] *See supra* note 14.